UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARK T. MURRAY,<br><br>Plaintiff,<br><br>v.<br><br>KRAIG NEWMAN, *et al.*,<br><br>Defendants. | Case No. C07-5215 RBL/KLS<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR: July 10, 2009** |

This matter is before the Court on the motion for summary judgment of Grays Harbor Sheriff Deputies Brian Rydman, Polly Davin and Brad Johansson. Dkt. 76. Defendants argue that Plaintiff Mark T. Murray's claims are barred by the statute of limitations and that they are entitled to qualified immunity because there was probable cause for the search warrant and arrest of Mr. Murray. *Id*. Having carefully reviewed Defendant's motion, supporting declarations (Dkts. 77, 78, 79), Mr. Murray's response (Dkt. 83), supporting affidavits (Dkts. 84 and 85), Defendants' reply (Dkt. 86) and balance of the record, the undersigned recommends that the motion be granted because Defendants are entitled to qualified immunity.

## CLAIMS

### A. Deputy Prosecuting Attorneys

Mr. Murray originally filed suit against two deputy prosecuting attorneys, Kraig Newman and Megan Valentine, alleging malicious prosecution. Defendant Valentine's motion to dismiss on grounds of absolute prosecutorial immunity was granted on May 20, 2008. Dkt. 44. Defendant

Newman's motion for summary judgment on grounds of qualified prosecutorial immunity was granted on August 1, 2008. Dkt. 57.

**B. Grays Habor Defendants**

In his Third Addendum to Complaint, Mr. Murray alleges that Deputies Brian Rydman, Polly Davis and John Doe (initialed BJ ID # 1610) (identified as Deputy Brad Johansson[1]) violated his rights to be free from unlawful searches and seizure and imprisonment under the Fourth and Fourteenth Amendments by placing knowingly false statements in an affidavit for a warrant when they omitted material facts and testimony from two eyewitnesses. Dkt. 63, p. 1.

**C. Facts Relating to Statute of Limitations**

In addition to suing the two deputy prosecuting attorneys (who are no longer parties to this action), Mr. Murray attempted to name the State of Washington as an additional party in a "supplement", page 3a to his complaint dated May 8, 2007 and filed May 10, 2007. Dkt. 8. However, there were no facts alleged that related to any action by the State of Washington or any of its employees. (*See* Dkt. 38 Order Regarding Supplement to Complaint). That document was docketed as a supplement rather than a praecipe. *Id*. After the Complaint was entered on the docket, the supplement was inadvertently excluded. Consequently, when the State of Washington was served with process, the Washington State Attorney General's Office returned this Court's Order Directing Service to the Clerk's Office because it was believed the State had been served with a lawsuit in which it was not a named party. Dkt. 35.

By Order dated April 23, 2008, Mr. Murray was granted leave to file an addendum to allege facts showing how individually named defendants(s) employed by the State of Washington caused or personally participated in depriving him of a constitutional right as to the claims stated in his original complaint. Dkt. 38, p. 2.

In a sworn Addendum filed on May 22, 2008, Mr. Murray explained that he named the State of Washington because after writing letters to Commissioners, the Governor and the Attorney

---

[1]Dkt. 76, p. 4.

General's office to complain about the "dereliction of duty by the Sheriff's Office and Prosecutor's Office of Grays Harbor County" about his arrest, he received a letter from the Attorney General's office advising him that its office would be representing the individuals named in Mr. Murray's letter. Dkt. 45, p. 1. Mr. Murray stated that shortly after he filed his Supplement, he was released from custody and was without medication and struggling to understand. *Id*. Mr. Murray explained further that the Supplement to his Complaint was his attempt to name the force that wrongly arrested and jailed him in violation of the Fourth Amendment. *Id*. At that time, he requested leave from the Court to correctly designate the "Grays Harbor County Sheriff's Office, i.e. Michael Whelan, Sheriff and/or David Christensen, Superintendent of Corrections for false arrest and unlawful imprisonment which are connected with my existing claims against Defendants Newman and Valentine." *Id*., p. 2.

On June 9, 2008, the Court granted Mr. Murray leave to amend his complaint to designate individuals in the Grays Harbor Sheriff's Office and/or Department of Corrections, but advised Mr. Murray that he must name specific individuals and include specific facts. Dkt. 49. On July 14, 2008, Mr. Murray submitted his Second Addendum (Dkt. 54), which the Court found deficient as Mr. Murray failed to name specific individuals who allegedly caused him constitutional harm. Dkt. 56. On August 22, 2008, Mr. Murray filed his Third Addendum to the Complaint, in which Defendants Rydman, Davin and John Doe (initialed BJ ID # 1610 (now identified as Defendant Johansson)) were named. Dkt. 63.

On March 4, 2009, Defendants Rydman, Davin and Johansson filed their Answer to Plaintiff's Third Addendum to Complaint with Affirmative Defenses. Dkt. 81. These Defendants did not assert the affirmative defense of the statute of limitations. *Id*.

**D. Facts Relating to Qualified Immunity**

Defendants Davin, Rydman and Johansson argue that they are entitled to qualified immunity because there was probable cause for the search warrant application and arrest of Mr. Murray. Defendants rely on the following summary judgment evidence.

Grays Harbor Sheriff's Deputy Polly Davin took a burglary report, in which Mark Murray, a

convicted felon, was alleged to have taken a shotgun and other items (including a guitar) from his brother Chris Murray's residence after Chris and his wife were arrested for domestic violence. Dkt. 77-2, Exh. 1, p. 1. In her affidavit for search warrant, Deputy Davin describes the report as follows:

> That on August 26, 2004, Carol and Chris Murray were arrested at, their residence 6615 Devonshire Road, for mutual assault and where [sic] taken to the County Jail. After seeing that the two were taken to the jail, Mark Murray went over to their residence and demanded that Ms. Lewis leave. She left immediately. In the morning when Ms. Murray was released the 12 gauge shotgun belonging to Mark Murray that was being stored in the residence was missing.

Dkt. 77-2, Exh. 2, p. 4.

On August 28, 2004, Grays Harbor Sheriff's Deputy Brian Rydman was dispatched to a domestic violence complaint. Dkt. 78-2, Exh. 1, p. 1. The complaining witness was Chris Murray, who alleged that his brother Mark had assaulted him with a collapsible baton at 6609 Central Park Drive (Mark Murray's residence). *Id*. When Deputy Rydman later interviewed Chris, Chris said that Mark Murray struck him twice with the baton while Chris was making a phone call. *Id*. Deputy Rydman saw a red mark across the outside of Chris Murray's left kneecap and a red mark/abrasion in the middle of his lower back and both marks were consistent with baton strikes. *Id*., pp. 1-2. Deputy Rydman took photographs of the marks on Chris. *Id*.

Chris Murray also told Deputy Rydman that Mark Murray was in possession of a 12 gauge shotgun. *Id*. Chris stated that Mark is a convicted felon and cannot possess guns, so Chris took it from Mark for safekeeping, but Mark took it back a few days earlier. *Id*. Chris stated that the house belongs to his parents, but they were staying at another residence in Port Angeles. *Id*. Chris said that Mark was living in the basement of the residence by himself and Chris was staying in a room on the main floor and his niece, Tara Hobaugh and her boyfriend, Michael D. Foley, were living in a room on the upper floor of the house at 6609 Central Park Drive. *Id*., p. 2.

Mr. Foley told Deputy Rydman that when the basement door was open earlier, he saw that Mark had the shotgun, baton and knife sitting by the door inside the basement. *Id*. Mr. Foley heard Mark Murray opening the basement door when Chris was on the phone with dispatch. *Id*. Mark

Murray came out of the basement with the baton and chased Mr. Foley up the stairs, swinging the baton at him. *Id*. Mr. Foley stated that when Mark Murray saw Chris, he took off after Chris swinging the baton. *Id*. Chris told Deputy Rydman that the baton Mark had belongs to Grays Harbor County and that he saw engraving on the baton. *Id*.

Deputy Rydman noted in his report that he could see through a window next to the front door, a Winchester firearm box sitting at the bottom of the stairs at the basement door. The box was the size of a shotgun. *Id.*

Chris Murray completed a written statement confirming the information he gave to Deputy Rydman. *Id*.; Dkt. 78-2, Exh. 2, pp. 4-5. Mark Foley said he did not want to give a statement against Mark for fear of retribution. Dkt. 78-2, Exh. 1, p. 2.

Deputy Davin's report and Deputy Rydman's report were reviewed with the prosecutor's office and a search warrant application was completed for 6609 Central Park Drive to search for the shotgun and collapsible baton. Dkt. 77-2, p. 1; Dkt. 77-2, Exh. 2. On August 30, 2004, a judge found probable cause and issued the search warrant. *Id*. Exh. 4.

On August 30, 2004, the search warrant was executed by Deputies Johansson, Libby and Davin at 6609 Central Park Drive. Dkt. 77, Exh. 1, p. 1. Mark Murray was located locked in the basement of the residence and arrested for the assault of his brother. *Id*., pp. 1-2. The search was completed and a collapsible baton was seized. *Id*., Exh. 3. The shotgun was not located. Dkt. 79-2, Exh. 1., p. 2.

After Mark Murray was arrested and read his *Miranda* warnings, he stated that he understood his rights and he was willing to talk to Deputy Johansson. *Id*., p. 1. He stated that his brother was in his house and he would not leave. He tried to make him leave and he would not go. He tried to push him out of the house and Chris kicked at him. He hit Chris in the leg with the baton. *Id*. He later completed a statement in which he admitted hitting his brother with a baton "to expel an intruder" from the house:

> About 2 hours later Chris showes [sic] up at the Residence. He would not leave after I told him the Judge told us to remain separated. He said that I would just have to leave, that he was moving in. He went upstair [sic] and started using the phone. I

> tried taking the phone from him and he kicked at me. I decided to "expel an intruder." I hit him once with a baton that I had "expandable". He ran out and I locked the door. I was pretty angry at being told I had to move out. But I only remember hitting him once. ... I did not steal a shotgun or a guitar. The guitar is my fathers, I know nothing about the shotgun.

Dkt. 78-2, Exh. 3, pp. 6-7.

Mr. Murray was arrested and arraigned on August 31, 2004 on a charge of Assault 4, Domestic Violence. Dkt. 76, p. 6. Assault in the Fourth Degree is committed, if "under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041. It is considered a Domestic Violence charge if it is committed by one family member against another. RCW 10.99.020(5)(d). "Family members" include adults related to each other by blood. RCW 10.99.020(3).

Mr. Murray provides the Affidavits of Chris Murray and Edward Murray, the Plaintiff's father, in his opposition to Defendants' motion for summary judgment. In his Affidavit, Chris Murray states that his wife was in jail and was not asked to leave her house by Mark Murray as stated by Deputy Davin. Dkt. 85, p. 1. Larry Everett and Shari Lewis were asked to leave his house. *Id*. Both affiants attest that Everett and Lewis have criminal records for drugs and theft and were not interviewed by sheriff's deputies. *Id*. Edward Murray states that Everett and Lewis have stolen from him. Dkt. 84, p. 2. Both affiants also attest that the six string Gibson electric guitar mentioned in the police reports belongs to Edward Murray and not Chris Murray. Dkt. 84, p. 1; Dkt. 85.

## II. STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or

as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id*.

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477 U.S. at 290); see also *California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

**III. DISCUSSION**

Defendants move for dismissal of Plaintiff's claims on two grounds. First, they argue that Mr. Murray's claims are barred by Washington's three year statute of limitations because he was arrested on August 30, 2004 and arraigned on August 31, 2004, but did not file his Third Addendum until nearly four years later on August 22, 2008. Dkt. 76, pp. 5-6.[2]. Mr. Murray argues that his

[2]The statute of limitations on a Section 1983 false arrest claim accrues from the time of the arrest. *Benegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir. 1983).

Third Addendum is timely because the Court sought clarification of his claim and granted him leave to file the addendum. Dkt. 83, p. 3.[3]

Second, Defendants argue that they are entitled to qualified immunity. Dkt. 60, pp. 13-16.[4]

After reviewing the summary judgment evidence in the light most favorable to Plaintiff, the undersigned finds that probable cause existed for application of the search warrant and Plaintiff's arrest. Therefore, Defendants are entitled to qualified immunity as a matter of law. Accordingly, the undersigned need not reach the Defendants' statute of limitations argument.

**Qualified Immunity**

Mr. Murray alleges that Defendants Davin, Rydman and/or Johansson knowingly placed false statements in their affidavits of probable cause in support of the arrest warrant by omitting material facts and by omitting the testimony of two eyewitnesses, "thereby failing to inform the judicial officer of facts he knew would negate probable cause for arrest." Dkt. 63, p. 1. Presumably, these two eyewitnesses are Sheri Lewis and Larry Everett, identified in the Affidavits of Chris and Edward Murray as individuals who were present at Chris Murray's home while Chris and Carol Murray were in jail, who had stolen from Edward Murray in the past, and who were "known substance abusers with criminal records for theft." Dkts. 84, 85.

---

[3]Defendants did not raise the affirmative defense of the statute of limitations in their answer. Dkt. 81. Fed.R.Civ.P. 56 permits a defendant to move for summary judgment on the basis of an affirmative defense and to support the motion with materials extraneous to the pleadings. Fed.R.Civ.P. 8(c) requires that the affirmative defense of the statute of limitations be raised in the initial pleading tendered by the defendant. However, a defendant may raise an affirmative defense in a motion for summary judgment for the first time where no claim of prejudice is raised by the plaintiff. *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984).

[4]Defendants argue that this issue has been dealt with dispositively by the Court when it granted Defendant Newman's summary judgment motion. *See* Dkt. 76, p. 8 (quoting R&R, Dkt. 52, p. 8). At that time, the Court concluded that Defendant Newman had not deliberately or recklessly made false statements or omissions in his declaration that were material to the finding of probable cause. At issue here is whether Defendants Davin, Rydman and/or Johansson knowingly placed false statements in their affidavits to support the arrest warrant.

Government officials performing discretionary functions are entitled to qualified immunity from damages if their conduct does not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir. 1988), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A law enforcement officer who obtains a search warrant is entitled to qualified immunity unless the "warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . ". *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). In addition, the doctrine of qualified immunity does not require that probable cause to arrest exist. Even absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of clearly established law and the information the searching officers possessed. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Thus, even if the officers were mistaken that probable cause to arrest Mr. Murray existed, they are nonetheless immune from liability if their mistake was reasonable. *Anderson*, 483 U.S. at 641.

The critical inquiry is whether a reasonable police officer could have believed that his or her conduct was lawful, in light of clearly established law and the information he or she possessed at the time. *Id*. The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Where the evidence is undisputed, a district court may establish that a defendant is entitled to qualified immunity as a matter of law. *See Thorsted v. Kelly*, 858 F.2d 571, 575 (9th Cir. 1988). However, "when there are triable issues of fact of a reasonable belief that a search is lawful, viewed in ligth of the settled nature of law, these issues are for the jury." *Id*. at 575. *See also Bilbry v. Brown*, 738 F.2d 1462, 1467 (9th Cir. 1984).

Here, the material facts are not in dispute.

***A. The Search Warrant***

The warrant application sought a warrant to search for and seize a twelve gauge shot gun and a collapsible baton type weapon at 6609 Central Park Drive. Dkt. 77-2, Exh. 4. Deputy Davin submitted the affidavit in support of the search warrant. *Id*., Exh. 2. She supported the affidavit

with the report of Deputy Rydman and information provided to her by Mark Murray's sister-in-law Carol Murray and her roommate Sherri Lewis. *Id*. Deputy Davin stated in her affidavit that Sherri Lewis personally witnessed Mr. Murray at his brother's residence where he ordered her to leave and when Carol Murray returned from jail, a shotgun was missing. *Id*. Deputy Rydman attests that the report attached as Exhibit 1 to his declaration is the report regarding the execution of the search warrant. Dkt. 78, p. 1; Dkt. 78, Exh. 1.[5] Deputy Davin's report and Deputy Rydman's report were reviewed with the prosecutor's office and a search warrant application was completed for 6609 Central Park Drive to search for the shotgun and collapsible baton. Dkt. 77-2, p. 1; Dkt. 77-2, Exh. 2. On August 30, 2004, a judge found probable cause and issued the search warrant. *Id*. Exh. 4.

Deputy Rydman spoke with Chris Murray, who stated that Mr. Murray assaulted him with the baton and that he was in possession of a 12 gauge Winchester shot gun even though his felony status forbade it. *Id*. He spoke with Michael Foley who said he saw the shotgun and baton by the door inside the basement. *Id.* Mr. Foley also reported to Deputy Rydman that he was chased by Mr. Murray with a baton and that Mr. Murray chased Chris with a baton. Defendants argue that "a law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). It has also been noted that the report is entitled to even greater weight where the citizen informant is the victim of the crime in question. *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1443 (9th Cir. 1991) (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972).

Here, the record reflects that the deputies relied not only on the statements of Chris Murray and Mr. Foley, but on the red marks on Chris Murray, which were consistent with baton strikes and a written statement by Chris Murray confirming the events. Deputy Rydman also viewed a Winchester firearm box through the window next to the front door at 6609 Central Park. *Id*.

Mr. Murray presents the affidavits of his brother, Chris Murray, and his father, Edward

---

[5]It is clear upon reading Deputy Rydman's report that the report does not relate to the *execution* of the search warrant at Mr. Murray's home, but was his report of the events on August 28, 2004 that preceded issuance of the search warrant.

Murray, which do not dispute any facts contained within the application for search warrant signed by Deputy Davin or the report of Officer Rydman that was used to support the application for a search warrant.

Mr. Murray also disputes whether the baton recovered during the search was the actual baton he used to assault his brother. Dkt. 83, p. 3. It is unclear, however, how the difference in the batons would diminish the existence of probable cause or create a genuine issue of material fact. The deputies acted on information that Mr. Murray struck his brother with a baton as well as the presence of marks on Chris Murray that supported the allegation of an assault.

Mr. Murray argues that Deputy Davin's report, prepared after execution of the search warrant, incorrectly states that a Gibson electric guitar reported stolen was located in his bedroom. Dkt. 83, p. 2. Edward and Chris Murray attest that the guitar found in Mr. Murray's bedroom belonged to Edward Murray and was not the guitar reported stolen. Dkts. 84 and 85. Mr. Murray also argues that Michael Foley told Deputy Davin, while the deputies were conducting the search, that he had not seen Mr. Murray in possession of a shotgun. Dkt. 83, p. 2 (citing Dkt. 77-2, p. 2). He argues that this conflicts with Deputy Rydman's earlier report in support of the warrant that states that Michael Foley told Deputy Rydman that Mr. Foley "saw that Mark had the shotgun, baton and knife sitting by the door inside the basement." As noted, Deputy Rydman's report was submitted in support of the search warrant and Deputy Davin's report was prepared after the search was conducted. Thus, the issues are not material to the determination of whether the deputies here should have known that the warrant application was so obviously devoid of probable cause so as not to apply for the warrant. The guitar was not included in the search warrant. Dkt. 77-2, Exh. 2. In addition, Mr. Murray was not arrested based on possession of the guitar or the shotgun.

Mr. Murray and Christopher Murray claim that Ms. Lewis was not interviewed by sheriff's deputies and that she will "testify to this also." Dkt. 83, p. 1; Dkt. 85, p. 1. Mr. Murray has not provided competent evidence in this regard. Pursuant to Fed.R.Civ.P. 56(e), affidavits supporting or opposing summary judgment must be made on personal knowledge, setting out facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated. In

addition, Mr. Murray fails to show how a lack of an interview has any relevance to whether the application for a search warrant lacked probable cause.

***B. Arrest***

The Fourth Amendment's prohibition against unreasonable seizures is not violated when there is probable cause for arrest. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause for arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest and that the probable cause inquiry is objective rather than subjective. *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004). When qualified immunity is at issue, the court must determine whether a reasonable officer "could have" concluded that there was probable cause for an arrest. *Bias v. Moynihan*, 508 F.3d 1212 (9th Cir. 2007).

It is undisputed that Deputy Rydman was dispatched to Mark Murray's house where Chris Murray alleged that Mark Murray hit him with an expandable baton. Dkt. 78-2, Exh. 1, p. 1. Chris showed Deputy Rydman red marks on his left kneecap that were consistent with baton strikes and he stated that Mark Murray was in possession of a 12 gauge shotgun. *Id*., p. 2. Deputy Rydman took photographs of the marks on Chris. *Id*. He told Deputy Rydman that Mark Murray was living in the basement of his parent's house at 6609 Central Park Drive. *Id*. Chris completed a statement confirming the information he gave to Deputy Rydman. *Id*., Exh. 2.

Mr. Murray does not dispute that he hit his brother, but argues that the deputies did not have probable cause to arrest him because he did not *intend* to hit him. Dkt. 83, p. 2. Self-defense is an affirmative defense which can be asserted to render an otherwise unlawful act lawful. *McBride v. Walla Walla County*, 975 P.2d 1029, 1033 (1999). "But the arresting officer does not make this determination. The officer is not judge or jury; he does not decide if the legal standard for self-defense is met." *Id*. More importantly, as noted in *McBride*, the claim of self-defense or fault of another is a mere assertion, not fact. The claim does not vitiate probable cause and the officer is

only required to determine if there is probable cause for the charge of domestic violence.

Based on all the information they obtained, it is clear that Deputies Rydman, Davin and Johansson conducted a sufficient investigation. Deputy Davin had probable cause to believe that the shotgun and baton were in Mr. Murray's residence. Deputy Davin based her affidavit on information provided by Mr. Murray's sister-in-law and her roommate regarding the missing shotgun, and on the report of Deputy Rydman regarding the collapsible baton. Deputies Davin and Johannson had probable cause to arrest Mr. Murray based on Deputy Rydman's report. Deputy Rydman was dispatched to a domestic violence complaint where Chris Murray claimed that Mr. Murray assaulted him with an expandable baton, he had marks on his body consistent with such an attack. Accordingly, Deputies Davin and Johannson are entitled to qualified immunity.

As there is no evidence that Deputy Rydman participated in Mr. Murray's arrest, he would also be entitled to qualified immunity.

## IV. CONCLUSION

Accordingly, the undersigned recommends that Defendants Davin, Rydman and Johansson's motion for summary judgment based on qualified immunity (Dkt. 76) be **GRANTED** and that Mr. Murray's claims against them be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for consideration on **July 10, 2009**, as noted in the caption.

DATED this 18th day of June, 2009.

Karen L. Strombom
United States Magistrate Judge